IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 25-cv-02668-LTB

N.J.M.,

Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

---

ORDER

---

Plaintiff, N.J.M., appeals from the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") filed pursuant to Title II of the Social Security Act, 42 U.S.C. § 1381, *et. seq.* Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE AND REMAND the SSA Commissioner's final decision for further proceedings as follows.

**I. STATEMENT OF THE CASE**

Plaintiff filed for benefits in March of 2019, claiming disability as of the amended onset date of October 1, 2018. Administrative Record ("AR") ECF #13-2 at

21. ECF #13-3 at 147-48.[1] Plaintiff's application was first denied on October 3, 2019, AR 13-3 at 145-47, and again denied upon reconsideration on December 18, 2020. AR 13-3 at 181-182. An Administrative Law Judge ("ALJ") subsequently held an initial hearing on May 4, 2023, during which a vocational expert provided testimony. AR 17 at 2702-42. And, on May 30, 2023, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 13-3 at 209-25.

Upon review, the Appeals Council remanded Plaintiff's claim back to the ALJ for further proceedings. AR 13-3 at 233-36. The Appeals Council found that the unfavorable decision determined that Plaintiff had the residual functional capacity ("RFC") to perform medium exertion work, but then also indicated that "a limitation to light exertional range of work is reasonable." AR 13-2 at 21. As such, the Appeals Council directed the ALJ on remand "to give further consideration to [Plaintiff's] maximum residual functional capacity, evaluate the medical source opinions and prior administrative medical findings, obtain evidence from a vocational expert, offer [Plaintiff] an opportunity for a hearing, address evidence which was submitted with the request for review, and take any further action needed to complete the administrative record and issue a new decision." AR 13-2 at 21 (citing AR 13-3 at 233-38).

On remand, the same ALJ held another hearing on April 19, 2024, and a supplemental hearing on September 10, 2024. AR 13-2 at 50-74 & 75-114. The ALJ

1 The Administrative Record ("AR") in this case is filed at Dockets number 13 and 17 of the Case Management/Electronic Case Files ("ECF") system. When citing to the AR, I refer to the page number found in the bottom right-hand corner of the page. For all other pleadings, I cite to the document and page number generated by the ECF system.

again denied Plaintiff's application in an order dated October 16, 2024, finding Plaintiff was not disabled for the 27-month period between her amended onset date of October 1, 2018, through December 31, 2020, the date of last insured. AR 13-2 at 18-38. The Appeals Council subsequently denied Plaintiff's request for review of this denial on July 22, 2025, AR 13-2 at 1-3, and thus this order became the SSA Commissioner's final decision. Plaintiff thereafter timely filed her complaint with this Court seeking judicial review of the Commissioner's final decision denying her DIB application. ECF #1.

## II. ALJ's DECISION

In the final decision at issue here, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a). The ALJ found that Plaintiff suffered from severe physical and mental impairments at step two, but then found that such impairment(s) did not meet or medically equal any of the listed impairments the SSA deems as so severe as to preclude substantial gainful activity at step three. AR 13-2 at 23-27. The ALJ then determined that through the date of last insured, Plaintiff retained the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following specific limitations:

> [Plaintiff] could lift no more than 50 pounds occasionally and lift and carry up to 25 pounds frequently; stand and or walk for about six hours, and sit for about six hours in an eight-hour work day, with normal breaks. [Plaintiff] could never climb ladders, ropes, or scaffolds; could frequently kneel, crouch, and crawl; could have occasional exposure to environmental irritants such as fumes, odors, dust, and gases; could never use moving hazardous machinery; and could have no exposure to unprotected heights. [Plaintiff] could understand, remember, and carry out simple instructions that can be learned in up to and including 30 days of on-the-job training; could have occasional interaction with supervisors and coworkers; could have no interaction with

> the public including via telephone; and could adapt to occasional changes in a routine work setting. AR 13-2 at 27.

Based on this assessed RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a business analyst (Dictionary of Occupational Titles "DOT" 032.262-010), on the basis that "this work was not past relevant work within the new regulatory definition because [Plaintiff] did not perform this work within five years prior to her date last insured" pursuant to 20 C.F.R. § 404.1560(b) and § 404.1565. AR 13-2 at 36.

The ALJ went on to find that, considering Plaintiff's age, education, work experience, and assessed RFC, there were jobs that existed in significant numbers in the national economy that she could have performed, pursuant to 20 C.F.R. § 404.1569 and § 404.1569a. AR 13-2 at 36. As a result, the ALJ concluded, at step five of the sequential process, that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and thus she was not disabled prior to the date last insured, December 31, 2020, "under the framework of the above-cited rule and the testimony of the vocational expert." AR 13-2 at 37.

## III. STANDARD OF REVIEW

When deciding Social Security appeals, this Court reviews the ALJ's decision to determine whether the factual findings were supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Levan v. Berryhill*, No. 18-CV-02340-NRN, 2019 WL 2336852 (D. Colo. 2019) (unpublished) (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007)); *see*

*also Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097 at *2 (10th Cir. Aug. 2, 2022) (unpublished) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). And "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition, "[t]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra*, 2022 WL 3041097, at *2 (quoting *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Therefore, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

In summary, reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra*, 489 F.3d at 1084.

## IV. ANALYSIS

On appeal here, Plaintiff asserts that the ALJ erred, at step three of the sequential evaluation, when finding that she did not meet a mental health listing. She also argues that the ALJ's assessment of her RFC was not supported by substantial evidence. ECF #18 at 14. Specifically, Plaintiff challenges: the determination that her statements were not entirely consistent with the evidence of record; the assessment of the persuasiveness of the medical opinions of record; and the sufficiency of the RFC limitations related to her cervicogenic vertigo. ECF #18 at 19-33.

However, because it requires remand, I first address Plaintiff's claim that the ALJ erred at step five of the sequential analysis, when she ruled that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Plaintiff argues that none of the three representative occupations cited by the ALJ to support her ruling that Plaintiff was capable of making a successful adjustment to other work were compatible with her assessed RFC. And, even if some of the identified jobs were consistent, Plaintiff argues that there was insufficient evidence as to whether those jobs existed in sufficient numbers in the national economy. ECF #18 at 14-19.

When concluding that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, the ALJ first noted that if Plaintiff had the RFC to perform a full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15. AR 13-2 at 36. However, the ALJ went on to find that Plaintiff's ability

to perform all or substantially all the requirements of this level of work "was impeded by additional limitations." AR 13-2 at 36. Thus, "[t]o determine the extent to which these limitations erode[d] the unskilled medium occupational base," the ALJ "asked the vocational expert whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity" and indicated that:

> [t]he vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative medium exertion, unskilled, SVP [specific vocational preparation level] 2 occupations such as hand packager, DOT 920.587-018, with 100,000 positions in the national economy; linen room attendant, DOT 222.387-030, with 30,000 positions in the national economy; and laundry worker, DOT 361.684-014, with 35,000 positions in the national economy. The vocational expert explained that this is a representative list of medium exertion jobs that the hypothetical individual could perform, rather than an exhaustive list. AR 13-2 at 37.

The ALJ determined that the vocational expert's testimony was consistent with the information contained in the DOT, and thus she concluded that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. AR 13-2 at 37.

The relevant testimony was provided by a vocational expert during the supplemental hearing on September 10, 2024. AR 13-2 at 60-74. At that hearing the ALJ asked the vocational expert to consider if work would be available for a hypothetical individual with an RFC consistent with Plaintiff's, given her age, education and past work experience. AR 13-2 at 60. The vocational expert testified that there would be work, however, the hypothetical individual would be limited to unskilled work at the medium level of physical exertion, of a non-customer service

nature. AR 13-2 at 60. The vocational expert initially provided the following jobs as examples of such work: Hand Packager; Scrap Sorter; and Linen Room Attendant. AR 13-2 at 60. After Plaintiff's counsel questioned the applicability of the Scrap Sorter (DOT 509.686-018) job – due to the fact that it could require use of a gas torch/fire and a conveyor belt – the ALJ asked if there was "another job that wouldn't require such dangerous use of [such] items rather than Scrap Sorter?" AR 13-2 at 64. The vocational expert responded with Rural Mail Carrier (DOT 230.363-010). AR 13-2 at 64. The ALJ asked the vocational expert for another job that didn't require driving, and the vocational expert provided Laundry Worker, I (DOT 361.684-014). AR 13-2 at 65. At this point the ALJ noted that:

> Okay. I guess we're just further defining some of these limitations in terms of the use of moving hazardous machinery. We've now included driving, and also a conveyor belt and blowtorch. AR 13-2 at 65.

In her final order, the ALJ relied upon the vocational expert's opinion that a hypothetical individual with Plaintiff's limitations would have been able to perform the requirements of representative medium exertion, unskilled, SVP 2 occupations. AR 13-2 at 37. The ALJ then set out the following representative/non-exhaustive examples as were provided by the vocational expert:

1) Hand Packager, DOT 920.587-018, with 100,000 positions in the national economy;

2) Linen Room Attendant, DOT 222.387-030, with 30,000 positions in the national economy; and

3) Laundry Worker, DOT 361.684-014, with 35,000 positions in the national economy.

On appeal here, Plaintiff contends that the jobs relied upon by the ALJ were not

applicable or representative of jobs she could have performed as they were incompatible with her assessed RFC, and that the ALJ's order failed to address and reconcile the discrepancy between Plaintiff's assessed RFC and the DOT description of the identified jobs. ECF #18 at 14-19.

At step five, the burden shifts to the Commissioner to determine whether the claimant has the RFC to perform other work in the national economy in view of her age, education, and work experience, and this burden can be met via testimony of a vocational expert. *Daniels v. Apfel*, 154 F. 3d 1129, 1132 (10th Cir. 1998). Social Security Ruling ("SSR") 00-4p governs the use of vocational expert testimony, and imposes an affirmative duty on the ALJ to identify and resolve conflicts between such testimony and the DOT. 2000 WL 1898704.[2] SSR 00-4p specifically provides that "[w]hen vocational evidence provided by a [vocational expert] . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the . . . evidence," and must "explain in the determination or decision how he or she resolved the conflict . . . irrespective of how the conflict was identified." 2000 WL 1898704, at *4.

### A. Hand Packager

Plaintiff first argues that the ALJ's reliance on the job of Hand Packager (DOT 920.587-018), AR 13-6 at 921-25, 1991 WL 687916, as an example of a job Plaintiff was capable of performing constituted error in that the DOT description

[2] SSR 00-4p has been replaced by SSR 24-3p, effective January 6, 2025. SSR 24-3p provides that courts review final agency decisions under the rules in effect at the time the decision was issued. Because the final order here was issued before SSR 24-3p's effective date, I evaluate Plaintiff's argument pursuant to SSR 00-4p.

requires the use of a conveyor belt which does not comply with Plaintiff's RFC limitation that she never use moving hazardous machinery. ECF #18 at 16 (AR 13-6 at 921). The Commissioner concedes here that Plaintiff's argument is "correct . . . because it involves the use of a conveyor belt" and the ALJ confirmed at the hearing "that the hazardous machinery restriction includes no use of a conveyor belt." ECF #19 at 16 (citing AR 13-2 at 65); see also AR 13-2 at 27.

**B. Linen Room Attendant**

As to the job of Linen Room Attendant (DOT 222.387-030), AR 13-6 at 913-16, 1991 WL 672098, Plaintiff argues that the job of Linen Room Attendant, which is assigned a general education development ("GED") reasoning level of 3 in the DOT description, is incompatible with the requirement in her RFC that she is limited to jobs that require her to understand, remember, and carry out only simple instructions. ECF #18 at 16-17. Plaintiff relies on *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), in which the Tenth Circuit remanded to "allow the ALJ to address the apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her" by the vocational expert.

I agree that the ALJ cannot rely on the job of Linen Room Attendant without a clarification of the apparent conflict between Plaintiff's ability to only "understand, remember, and carry out simple instructions that can be learned in up to and including 30 days of on-the-job training," AR 13-2 at 27, and the GED level three reasoning required by that job as set forth in the DOT. *See C.H. v. Dudek*, No.

23-CV-02723-LTB, 2025 WL 3083640, at *5 (D. Colo. May 5, 2025)(unpublished); *C.K.D. v. Kijakazi*, No. 21-CV-02155-NYW, 2022 WL 4290472, at *7 (D. Colo. 2022)(unpublished); *but see T.J.G. v. Comm'r, Soc. Sec. Admin.*, No. 24-CV-02504-CNS, 2025 WL 1862840, at *11 (D. Colo. July 7, 2025) (unpublished)(declining to find that a limitation to simple instructions is always incompatible with jobs requiring level-two reasoning). In so finding, I acknowledge the Commissioner's argument that there is no "categorical rule" as to whether an occupation with a reasoning level of three conflicts with an RFC limitation to work with "simple instructions," but reject and the unsupported assertion that a case-by-case approach is more consistent with the deferential substantial evidence standard of review. ECF #19 at 18. More importantly, to the extent the Commissioner argues that Plaintiff's three years of college education and skilled work experience means that I could find that there was no conflict between Plaintiff's RFC limitation to simple work and the job of Linen Room Attendant, ECF #19 at 19, I find such *post hoc* reasoning unpersuasive. The ALJ found that Plaintiff was limited to jobs that require only that she understand, remember, and carry out simple instructions, and the DOT job description for Linen Room Attendant provides a reasoning level of three – requiring the need to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." AR 13-6 at 913. Such conflict mandates remand for the ALJ to address the apparent disagreement between Plaintiff's RFC limitation to simple and repetitive tasks, and

the level three reasoning required by the of Linen Room Attendant job. *Hackett v. Barnhart*, *supra*, 395 F.3d at 1176. .

In addition, Plaintiff argues that the job of Linen Room Attendant is inconsistent with the RFC limitation that prohibits her from using moving hazardous machinery because it requires operation of a sewing machine. ECF #18 at 16. The Commissioner responses that the DOT description provides that a Linen Room Attendant "[m]ay mend torn articles with needle and thread *or* sewing machine," AR 13-6 at 913 (emphasis added), and because the worker may hand sew, this job is not precluded by the RFC limitation that Plaintiff never use moving hazardous machinery. ECF #19 at 17. While the Commissioner is correct that the job of Linen Room Attendant does not directly conflict with Plaintiff's RFC limitation that prohibits her from using moving hazardous machinery, I agree with Plaintiff that the limitation could reduce the number of jobs in that "at least some [of the available positions] require the use of a sewing machine" and there was no evidence or finding by the ALJ as to how much of a reduction in the number of job would be available. ECF #20 at 4.

**C. Laundry Worker, I**

Finally, as to the Laundry Worker, I occupation (DOT 361.684-014), AR 13-6 at 917-20, 1991 WL 672983, Plaintiff contends that such jobs require the worker operate "laundry equipment" which, she inserts, is recognized as hazardous machinery. ECF #18 at 17-18. In addition, she argues that the DOT job description of a Laundry Worker has not been updated since 1977, and "[i]n today's economy,

this occupation requires significant face to face discussions with co-workers and supervisors (52%), as well as working in a team, constant contact with others, continuous bending and twisting, and being in close proximately with others." ECF #18 at 18. Plaintiff's arguments are not based on inconsistencies in the DOT description, but rather on alternative sources such as an Occupational Safety and Health Administration ("OSHA") Manual and a U.S. Department of Labor database known as O*NET. ECF #18 at 18. SSR 00-4p only requires the ALJ to resolve conflicts between vocational expert testimony and the DOT, and Plaintiff cites no authority requiring an ALJ to resolve conflicts between vocational expert testimony and other sources. *See Kevin O. v. Bisignano*, No. 1:25-CV-00006-CMR, 2026 WL 884012, at *4 (D. Utah Mar. 31, 2026)(unpublished)(ruling that the court cannot conclude the ALJ had to address alleged inconsistencies outside the DOT, and thus was "not persuaded by [the claimant's] arguments based on conflicts with sources other than the DOT").

**D. Jobs Available in the National Economy**

The Commissioner argues that even if the ALJ erred when finding that Plaintiff was capable of performing two of the identified occupations – namely, the jobs of Hand Packager and Linen Room Attendant – such error was harmless in that the Laundry Worker, I job represents 35,000 jobs "which the Court could find [standing alone] constitutes a significant number in the national economy." ECF #19 at 22.

The vocational expert testified that nationally there are 100,000 Hand

Packager jobs, 30,000 Linen Room Attendant jobs, and 35,000 Laundry Worker, 1 jobs. AR 13-2 at 60-65. As such, the evidence supporting the ALJ's ruling that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy was based on 165,000 example jobs. However, that number is significantly diminished due, at the least, to the inapplicability of the Hand Packager job as an occupation that Plaintiff could perform, as discussed above. As noted by the Commissioner, there "is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen [v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004)] that [the Tenth Circuit] refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs . . . considered in *Stokes [v. Astrue,* 274 Fed. App'x 675, 684 (10th Cir. 2008)(unpublished)] to be sufficient so far for application of harmless error." *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016)(unpublished). Several factors go into the evaluation of whether a number of jobs is significant, including: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

I decline to accept the Commissioner's invitation to conclude that, as a matter of law, a significant number of jobs existed that Plaintiff could still perform – even if

the two of the three occupations were removed – based on 35,000 Laundry Worker, 1 jobs available. ECF #19 at 20 (citing several unpublished District Court rulings including *Garcia v. Saul*, No. 18-cv-00917-REB, 2019 WL 3802105, at *4 (D. Colo. Aug. 13, 2019)(unpublished)(ruling that two of three jobs were within the claimant's RFC, and concluding that 24,000 of those jobs in the national economy was significant)). I cannot confidently say that "no reasonable administrative factfinder" would conclude 35,000 jobs existing in the national economy is a significant number of jobs in order to find harmless error here. *See Allen v. Barnhart*, *supra*, 357 F.3d at 1145; *Gallegos v. Berryhill*, No. 17-CV-00647-PAB, 2019 WL 1434618, at *4 (D. Colo. Mar. 31, 2019)(unpublished). The evaluation of whether a significant number of jobs exist "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, *supra*, 357 F.3d at 1144 (quoting *Trimiar v. Sullivan*, *supra*, 966 F.2d at 1330). Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance, and that district courts supply a dispositive finding only in an "exceptional circumstance," I decline to apply harmless error to conclude that there are a significant number of jobs available to Plaintiff here. *See Cain v. Berryhill*, No. 16-CV-00640-GKF-FHM, 2018 WL 1247876, at *5 (N.D. Okla. Mar. 9, 2018)(unpublished).

As a result, I conclude that the ALJ's ruling that the Commissioner met his burden to prove, at step five, that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national

economy, AR 13-2 at 38, constitutes reversible error.

**E. Immediate Award of Benefits**

Lastly, I deny Plaintiff's request for an immediate award of benefits, as opposed to a remand for further proceedings. In so doing, I first reject Plaintiff's assertion that both vocational experts "were unable to identify any 'medium' occupations that match [Plaintiff's] RFC" and thus "under SSR 83-12 the Grid Rule for 'light' work must be applied (i.e., Grid Rule 202.04), and a finding of disability is required." ECF #18 at 19 (also arguing that the Grid rule for light work should be applied because "a remand for third round of [vocational expert] testimony is unlikely to result in any different testimony" and Plaintiff's "RFC causes a significant erosion in the occupational base for 'medium' work"). The ALJ here specifically ruled here that the vocational expert she relied on explained that the jobs identified constituted "a representative list of medium exertion jobs that the hypothetical individual could perform, rather than an exhaustive list." AR 13-2 at 37, 60.

I also decline to award immediate benefits based on Plaintiff's arguments that such award would be "proper" in that her application has been pending since March of 2019 "for over almost seven (7) years," during which the ALJ has issued two reversible decisions. ECF #18 at 33. "[I]t is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding whether to reverse for an immediate award of benefits, some factors courts should

consider include the length of time the matter has been pending and whether, given the available evidence, remand for additional fact-finding would serve any useful purpose or merely delay the receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006); *K.A.S. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-02600-SKC, 2023 WL 12188420, at *1 (D. Colo. Nov. 1, 2023)(unpublished). I find that a remand for additional fact-finding would serve a useful purpose here considering the nature of the error at issue, and because an award of benefits is not manifest from the administrative record. *Id.* (noting that whether an immediate award of benefits is justified is discretionary)(citing *Sallee v. Berryhill*, No. 17-CV-02397-KLM, 2019 WL 1198818, at *4 (D. Colo. Mar. 13, 2019)(unpublished).

Finally, I decline to address the remaining arguments raised as errors by Plaintiff on appeal as "they may be affected by the ALJ's treatment of this case on remand." *M.D. v. Kijakazi*, No. 21-CV-01963-NYW, 2022 WL 3227621, at *14 (D. Colo. Aug. 10, 2022)(unpublished)(citing *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003)(declining to address the remaining arguments raised in the claimant's briefing, and directing the ALJ to consider the remaining issues "in particular, [the claimant's] argument concerning the number of jobs in the national economy" and to modify her decision if appropriate).

ACCORDINGLY, for the foregoing reasons, I REVERSE the final decision of the SSA Commissioner denying Plaintiff's application for disability insurance benefits, and I REMAND for further proceedings as directed.

Dated: September 1, 2026 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE